SHIRLEY S. ABRAHAMSON, C.J.
¶ 67. {dissenting). I would affirm the court of appeals. I would follow Wisconsin law and conclude that as a general rule, parties need not plead specific facts at the motion-to-dismiss phase. In the instant case, although the plaintiffs raised the business judgment rule in their complaint, the plaintiffs also set forth sufficient facts to *696 plead around the rule and provide notice to the defendants of the claim being alleged.[1]
¶ 68. The majority opinion holds that "plaintiffs must allege facts that, if true, plausibly suggest a violation of applicable law,"[2] the majority opinion relies on Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).[3] In the federal courts, Twombly's standard is interpreted with the subsequent case Ashcroft v. Iqbal, 556 U.S. 662 (2009). Twombly required a plaintiff in an antitrust case alleging violations of the federal Sherman Act to "state a claim to relief that is plausible on its face."[4] Iqbal required a plaintiff who alleged a Bivens[5] action against federal law enforcement officers for liability regarding the harsh conditions of his confinement to plead facts that "state a plausible claim for relief."[6]
¶ 69. No one is sure what Twombly means: "Exactly how implausible is 'implausible' remains to be seen . . . ."[7] Twombly and Iqbal have created confusion and chaos in the federal courts regarding the *697 current state of pleading requirements.[8] Under Twombly/Iqbal, federal district courts have increased the rate at which they grant motions to dismiss.[9]
¶ 70. No Wisconsin case has adopted the rule as stated in Twombly and Iqbal. Twombly was not argued or briefed in the instant case. The majority opinion relies on the Twombly heightened pleading standard without any briefing or argument. I have written before that this court should give counsel the opportunity to develop arguments before the court in the adversarial system:
Some justices proceed to make decisions without benefit of arguments or briefs by the parties. Others prefer more restraint. Some justices apparently perceive that the rule of law is advanced by a sua sponte approach. We do not.
The rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral argument.
Indeed, a court's sua sponte determination of an issue may raise due process considerations: A court may be *698 depriving parties of their right to a meaningful appeal, to due process notice, and to adversary counsel.[10]
¶ 71. As Justice Bradley has recently written, this court's role is to weigh the arguments of counsel, not to make arguments as counsel:
By raising sua sponte a brand new outcome determinative issue, an appellate court tends to blur the lines between the role of the lawyer as advocate and the role of the judge as impartial decision maker. In contrast to the other branches of government, the judicial branch's role seems better fitted to respond to issues presented rather than creating issues to present.[11]
¶ 72. Rather than provide a detailed critique of the majority opinion, I am setting forth the opinion I think should have been written by this court.
* * * *

¶ 73. This is a review of a published decision of the court of appeals reversing an order of the circuit court for Wood County, Jon M. Counsell, Judged.

[12]

 The circuit court dismissed the complaint, concluding that 
*699
the complaint failed to state a claim upon which relief can be granted. The court of appeals reversed the order of the circuit court. I would affirm the decision of the court of appeals and remand the matter to the circuit court for further proceedings.

¶ 74. The plaintiff is Data Key Partners, a minority shareholder of Renaissance Learning, Inc., a publicly traded Wisconsin corporation headquartered in Wisconsin Rapids, Wisconsin. The complaint alleges a breach of fiduciary duty by the directors and the majority shareholders in accepting a purchase agreement for the corporation from Permira Advisors LLC.

¶ 75. The defendants are Permira Advisors LLC, Raphael Holding Company, and Raphael Acquisition Corporation (collectively the buyer-defendants); Terrance D. Paul and Judith Ames Paul (collectively the Pauls); Addison L. Piper, Harold E. Jordan, Mark D. Musick, Randall J. Erickson, and Glenn R. James (collectively the non-Paul director-defendants); and Renaissance Learning, Inc.

¶ 76. The claims in the complaint at issue here allege that minority shareholders were harmed by: (1) the non-Paul director-defendants' breach of fiduciary duties for failing to independently investigate the multiple bids for purchase of the corporation and for acting in their own personal interests against those of the shareholders; and (2) the Pauls as majority shareholders for engaging in self-dealing, breaching their fiduciary duties in accepting the purchase agreement favorable to their personal interests,[13]
*700 ¶ 77. The defendants assert that the complaint fails to allege a claim upon which relief can be granted because it does not allege facts that, if proven, would establish an exception to the business judgment rule.[14]

¶ 78. For the reasons set forth, I agree with the court of appeals that the complaint satisfies Wisconsin's requirements of notice pleading. Our pleading rules 
*701
require only that a complaint plead a "short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." Wis. Stat. § 802.02(1).

¶ 79. The complaint in the instant case gives fair notice to the defendants of the claims upon which relief can be granted. This court is not presented with sufficient reason to create an exception to our notice pleading requirements in the present case. Our decision involves only the motion-to-dismiss phase of the proceedings. I do not comment on the application of the business judgment rule to later stages of the proceeding, and I do not comment on the merits of the plaintiffs claims, only the sufficiency of the complaint.

¶ 80. I commend the court of appeals for its thorough analysis of the claims. I benefited substantially from its cogent discussion, notably the interplay between our state's notice pleading rules and the business judgment rule.

¶ 81. Accordingly, I would affirm the decision of the court of appeals holding that the circuit court erred in granting the motions to dismiss the two claims discussed above, and I would remand the matter to the circuit court for further proceedings consistent with this opinion.

I

¶ 82. The facts and procedural history set forth herein are based on the complaint.

¶ 83. Renaissance Learning, Inc. was a publicly traded Wisconsin corporation founded by the Pauls in 1986. The Pauls were majority shareholders, collectively controlling or owning 69% of the 29 million shares of 
*702
Renaissance stock. The Pauls served as directors and occasionally served as corporate officers.

¶ 84. Data Key was a minority shareholder, among approximately 269 total shareholders.

¶ 85. The Pauls decided to retire and end their involvement in Renaissance. Because their number of shares was substantial, the Pauls decided to sell the corporation rather than attempt to sell their shares on the open market.

¶ 86. To facilitate the sale, Renaissance selected the Pauls' personal banker, Goldman Sachs, as a financial advisor for the sale, at the Pauls' request. The sale attracted two bidders: the buyer-defendant, Permira Advisers LLC, and Plato Learning, Inc.

¶ 87. Permira's first offer to purchase Renaissance was for $14.85 per share. Renaissance entered into an "Agreement and Plan of Merger" for this price.

¶ 88. Subsequently, Plato put in a higher bid of $15.50 per share. The Renaissance board of directors rejected the Plato offer, deferring to the Pauls' reasoning that the Permira offer was more likely to be consummated and that Permira would exact a $13 million penalty if Renaissance backed out of the sale agreement.

¶ 89. The Renaissance board of directors then amended its agreement with Permira. The new terms were that Permira would pay $15 per share to the majority shareholders (the Pauls) and $16.60 per share to the minority shareholders, totaling about $455 million.

¶ 90. Plato put in a new bid, offering $15.10 per share to the Pauls and $18 per share for the minority shareholders, totaling about $471 million. The Pauls informed the other directors that the Pauls would not vote in favor of the revised Plato offer. The Pauls were 
*703
concerned that the Plato deal had a higher risk of non-consummation; that the Plato deal would take longer to close; that the Pauls might be held personally liable if the Permira offer were rejected; and that the Plato deal did not include a licensing grant to Base Camp Learning Services, Inc., another company controlled by the Pauls.

¶ 91. Plato made yet another higher bid, this time of $496 million, leaving open to further negotiation the exact price per share for the Pauls and the minority shareholders.

¶ 92. The Renaissance board of directors rejected the latest offer from Plato and finalized the sale to Permira at $15 per share for the Pauls and $16.60 per share for the minority shareholders.

¶ 93. The plaintiff initiated a suit alleging four separate claims, of which only the following two are relevant here:

(1) Against the Pauls as directors and the other director-defendants, for breach of fiduciary duties of good faith, loyalty, fair dealing, and due care regarding the sale, including, inter alia, that the non-Paul director-defendants abdicated their responsibility by allowing the Pauls to manage the sale and that the Pauls received personal benefits including indemnification from the sale;

[15]

(2) Against the Pauls as majority shareholders for breach of fiduciary duties to the minority shareholders regarding the sale, specifically that they 
*704
used their influence on the board to force the sale to Permira for their own personal benefit.

¶ 94. The defendants filed motions, pursuant to Wis. Stat. § 802.06(2)(a)6., to dismiss the complaint for failure to state a claim upon which relief can be granted.

[16]

¶ 95. Regarding the first claim described above for the non-Paul director-defendants' breach of fiduciary duty, the circuit court ruled that the complaint failed to allege sufficient facts to overcome the business judgment rule, "which limits judicial review of corporate decision making when corporate directors make decisions on an informed basis in good faith and in the honest belief that the action taken is in the best interests of the company."

¶ 96. Regarding the second claim described above for the Pauls' breach of fiduciary duty, the circuit court ruled that the Pauls had the right to sell their shares and to vote their shares in their own interests.

¶ 97. The court of appeals reversed the circuit court with regard to both claims. Regarding the first claim, the court of appeals reasoned that the complaint adhered to the requirements of notice pleading and that the circuit court erred in applying the business judgment rule in deciding the motion to dismiss the complaint.

¶ 98. Regarding the second claim, the court of appeals reasoned that the allegations in the complaint were sufficient to give rise to an inference that the Pauls' 
*705
actions and undue influence over the board's actions went beyond the mere sale of their shares and violated the Pauls' duty to minority shareholders.

¶ 99. The court of appeals remanded the matter to the circuit court for further proceedings on these surviving claims.

II

¶ 100. A motion to dismiss a complaint tests the legal sufficiency of the complaint. Whether the complaint states a claim upon which relief can be granted is a question of law.

[17]

 Accordingly, this court decides a motion to dismiss a complaint for failure to state a claim upon which relief can be granted independently of the circuit court and court of appeals, benefiting from their analysis.

[18]

¶ 101. For purposes of deciding a motion to dismiss, a court must accept as true the facts pleaded and all reasonable inferences that may be drawn from the pleadings.

[19]

 The pleadings are to be liberally construed so as to do substantial justice.

[20]

 The complaint is not 
*706
required, to state all the ultimate facts constituting each cause of action.

[21]

 The complaint should be dismissed as legally insufficient only if it is clear that under no circumstances can the claimant recover.

[22]

 A court should not dismiss a claim unless it appears to a certainty that no relief can be granted under any set of facts that a claimant can prove in support of the allegations in the complaint

[23]

¶ 102. To survive a motion to dismiss, the complaint must satisfy the notice pleading requirements of Wisconsin's Rules of Civil Procedure. Wisconsin Stat. § 802.02 requires that a pleading contain a short and plain statement identifying the transaction or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

¶ 103. Section 802.02 provides as follows:

(1) Contents of pleadings. A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:

(a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

(b) A demand for judgment for the relief the pleader seeks.

Wis. Stat. §802.02(1).

*707 ¶ 104. When Wisconsin adopted Wis. Stat. § 802.02(1) in 1976 as part of a revision of the Wisconsin Rules of Civil Procedure, the state discarded the concept of "ultimate fact" pleading and instead endorsed the notion of "notice pleading. "[24] Notice pleading in §802.02(1) is based on the Federal Rules of Civil Procedure[25]
¶ 105. Under notice pleading, a pleading need provide only fair notice to the defendant sufficient for the defendant to raise a defense: "[I]t is immaterial whether a pleading states facts' or 'conclusions' so long as fair notice is given, and the statement of the claim is short and plain."[26] In other words, "[t]he purpose of pleadings is to notify the opposing party of the pleader's position in the case and to frame the issues to be resolved in the action for the benefit of the litigants and the court."[27]
¶ 106. This is not to say that the complaint can be completely devoid of facts. The pleading must identify the transaction, occurrence, or event out of which the *708 claim arises. Notice pleading "forbids pleadings which are so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading. "[28] As the court recently stated regarding the factual requirements of notice pleading:
A bare conclusion does not fulfill a plaintiffs duty of stating the elements of a claim in general terms. In short, we will dismiss a complaint if, under the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court. It is not enough for the plaintiff to contend that the requisite facts will be supplied by the discovery process.[29]

¶ 107. Specific and limited exceptions to notice pleading exist. For example, Wis. Stat. § 802.03(2) governs pleadings for fraud or mistake, requiring that "the circumstances constituting fraud or mistake shall be stated with particularity" but allowing that "[mjalice, intent, knowledge, and other condition of mind of a person may be averred generally." Similarly, § 802.03(6) governs pleadings for libel and slander, requiring that "the particular words complained of shall be set forth in the complaint, but their publication and their application to the plaintiff may be stated generally." None of the provisions in § 802.03 governing exceptions to notice pleading applies to the instant case.

¶ 108. Thus, this court must determine whether the complaint sets forth a short and plain statement of the claim, identifying the transaction or occurrence or 
*709
series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief

¶ 109. I look to each claim in turn, first the claim against the Pauls as directors and the non-Paul director-defendants, and then the claim against the Pauls as majority shareholders.

Ill

¶ 110. I first examine the plaintiffs claim that the director-defendants (including the Pauls) breached their fiduciary duty to the shareholders. Because the plaintiffs claim focuses on the directors' abdication of their duties by entrusting the sale of the company to the Pauls, I look specifically at the claim against the non-Paul director-defendants.

¶ 111. The elements for a claim of breach of fiduciary duty are as follows: (1) the defendant had a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused injury to the plaintiff.'[30]
¶ 112. On the first element, the plaintiff alleges that the defendants, as directors of a publicly held company, owe fiduciary duties to the shareholders.[31]

¶ 113. The plaintiff s allegation is in accord with our state's law. Wisconsin has long recognized that a trust relationship exists between the shareholders and the directors and that fiduciary duties of the directors to the shareholders arise from the relationship 

[32]

 Directors owe fiduciary duties to individual stockholders, not 
*710
merely to the corporation itself.

[33]

 "[Officers and directors of a corporation occupy a position of trust and confidence, and are considered in the law as standing in a fiduciary relation toward the stockholders and as trustees for them."

[34]

¶ 114. On the second element, the nature of this fiduciary duty is one of good faith, fair dealing, and loyalty.

[35]

¶ 115. The plaintiff alleges essentially two breaches of fiduciary duty: (1) that the directors abdicated their duty of care in allowing the Pauls to run the sale of the company without oversight; and (2) that the directors received self-interested benefits that led them to vote for the Permira offer over the Plato offer.

¶ 116. I conclude that the plaintiff sufficiently alleges a breach of the directors' fiduciary duty.

¶ 117. The director-defendants assert that the complaint does not overcome the business judgment rule and consequently must be dismissed for failure to state a claim. The director-defendants point to Wis. Stat. § 180.0828 for support. They argue that because the complaint fails to state facts demonstrating specific 
*711
circumstances that overcome the business judgment rule, the complaint cannot survive a motion to dismiss.

¶ 118. Wisconsin Stat. § 180.0828 creates a statutory version of the business judgment rule: A director is not liable for damages for liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the claimant proves that the breach or failure to perform falls within one of the exceptions set forth in the statute.

¶ 119. Section 180.0828, the business judgment rule statute, reads in full as follows:

(1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:

(a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.

(b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.

(c) A transaction from which the director derived an improper personal profit.

(d) Willful misconduct.

(2) A corporation may limit the immunity provided under this section by its articles of incorporation. A limitation under this subsection applies if the cause of 
*712
action against a director accrues while the limitation is in effect (emphasis added).

[36]

¶ 120. The director-defendants read this statute as providing blanket immunity for directors unless the complaint alleges that the directors' liability is based on conduct falling within Wis. Stat. § 180.0828(l)(a)-(d). Thus the director-defendants request that the court create an exception to the notice pleading requirements of Wis. Stat. § 802.02(2) and require the complaint to plead facts that, if proven, would meet the enumerated statutory circumstances necessary to overcome the business judgment rule and impose liability on directors.

¶ 121. The director-defendants argue that the notice pleading requirements are surpassed by the need for specific fact pleading in a suit against corporate directors for breach of fiduciary duty. Specific fact pleading in the complaint is required, according to the director-defendants, to limit court involvement in business decisions in which courts have no expertise and to encourage people to serve as directors by ensuring that honest errors of judgment will not subject them to personal liability.

[37]

¶ 122. Like the court of appeals, I reject the director-defendants' position. I agree with the court of appeals that courts in notice pleading jurisdictions traditionally disfavor application of the business judgment rule at the motion-to-dismiss stage because the rule 
*713
generally requires a fact-intensive analysis incompatible with notice pleading. I agree with the court of appeals that the complaint is not required to include allegations with considerable specificity sufficient to defeat the defense of the business judgment rule.

[38]

¶ 123. Regardless of whether the business judgment rule is viewed as a "mere rule of evidence,"[39] an "affirmative defense,"[40] an "evidentiary presumption,"[41] or, as the defendants aver, a "blanket rule of non-liability,"[42] application of the business judgment rule is inherently fact-based, ordinarily requiring investigation of the particular acts, interests, and decision-making processes of various actors [43]

¶ 124. My holding that notice pleading requirements disfavor specific fact pleading regarding the business judgment rule at the motion-to-dismiss stage is supported by cases in other notice-pleading jurisdictions. The paradigmatic case in this regard is In re Tower Air, Inc., 416 F.3d 229, 238-39 (3d Cir. 2005).

¶ 125. In Tower Air, the United States Court of Appeals for the Third Circuit stated that as a general rule it would not rely on the business judgment rule to 
*714
trigger dismissal under Federal Rule of Civil Procedure 12(b)(6), the analogous federal rule to Wisconsin's § 802.06(2)(a)6. The Third Circuit reasoned that the business judgment rule is an affirmative defense, which will trigger dismissal if it is raised and unanswered on the face of the complaint itself

¶ 126. In Tower Air, the shareholder claimant alleged, inter alia, that the directors of Tower Air breached their fiduciary duty to act in good faith by ignoring various deficiencies in Tower Air's management and business deals and by failing to review and provide oversight for those deficiencies. In Tower Air, the trial court dismissed the complaint, requiring the claimant to allege specific facts upon which the claim is based.

¶ 127. The Third Circuit rejected the trial court's position, stating that the trial court "erroneously preempted discovery on certain claims by imposing a heightened pleading standard not required by [the] Federal Rule[s] of Civil Procedure" by requiring the shareholder to plead specific facts.

[44]

 The Third Circuit distinguished between Delaware's heightened pleading requirements and the relaxed pleading standards of the federal courts that "do not require a claimant to set out in detail the facts upon which he bases his claim."

[45]

*715
¶ 128. In a notice pleading jurisdiction, "supporting facts should be alleged, but only those necessary to provide the defendant fair notice of the plaintiffs claim and the grounds upon which it rests." Tower Air, 416 F.3d at 237 (internal quotation marks and citation omitted).

¶ 129. Based on this reasoning, the Third Circuit held that as a general rule, "we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint. . . Tower Air, 416 F.3d at 238.

¶ 130. The Tower Air court's analysis did not stop here. It further reasoned that if "an unanswered affirmative defense appears on [the] face" of the complaint, the shareholder claimant had to "plead around the business judgment rule." Tower Air, 416 F.3d at 238 (citing ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994)).

[46]

¶ 131. In Tower Air, the shareholder claimant specifically alleged in each of his claims that the decisions of the directors "merited no business judgment protection because they were taken in bad faith." Tower Air, 416 F.3d at 234. Thus, the Tower Air court reasoned that the shareholder claimant had "[pled] around the business judgment rule." Id. at 238.

*716
¶ 132. In the instant case, the plaintiff refers to the business judgment rule statute, Wis. Stat. § 180.0828, on the face of the complaint and also pleads around the rule.

¶ 133. Specifically, the plaintiff alleges that the rule is inapplicable in the instant case because the director-defendants engaged in "willful misconduct," one of the exceptions to the applicability of Wis. Stat. § 180.0828:

Notably, because the Director Defendants have willfully failed to deal fairly with the minority shareholders, and have derived or will derive an improper personal benefit and/or have engaged in willful misconduct, they are not entitled to any protection of Sec. 180.0828, Wis. Stat. or any protective provision in the Company's Articles of Incorporation or Bylaws.

Second Amended Complaint, ¶ 27.

¶ 134. I agree with the court of appeals that, construed liberally, the complaint sufficiently alleges facts that, if true, plead around the business judgment rule:

Data Key alleged in its complaint, among many other substantive allegations, that the directors engaged in "willful misconduct by willfully failing to deal fairly with the Plaintiffs and the Company's other minority public shareholders in a matter in which they have a material conflict of interest." The defendants acknowledge this allegation but nonetheless argue that Data Key's complaint comes "nowhere close to satisfying" the exceptions to the business judgment rule and that "nothing resembling" willful misconduct is alleged in Data Key's complaint. The defendants thus appear to take the position that application of the rule at the motion to dismiss stage of proceedings requires that a plaintiff plead facts sufficient to defeat the defense with consid
*717
erable specificity. Such specificity is generally not required for purposes of notice pleading.

Data Key Partners, 350 Wis. 2d 347, ¶ 25 (emphasis added).

¶ 135. To successfully plead the "willful misconduct" of the director-defendants necessary to fall within the exception to the business judgment rule listed in Wis. Stat. § 180.0828(l)(d), the plaintiff need not state the ultimate facts.

¶ 136. The plaintiff s allegations sufficiently plead facts regarding the deliberate, intentional, or knowing misconduct of the director-defendants that could give rise to "willful misconduct." The plaintiff alleged that the director-defendants "abdicated their responsibilities" by allowing the Pauls to run the sale and deliberately failed to independently investigate the sale due to their self-interested dealings in receiving payments and benefits from the Permira sale 

[47]

¶ 137. In the instant case, I would embrace the holding of Tower Air that, as a general rule, courts in notice pleading jurisdictions will not rely on the business judgment rule to dismiss a complaint on a motion to dismiss.

¶ 138. The Third Circuit's reasoning is consistent with the general trend of federal cases both before and after Tower Air, which note that the business judgment rule is a fact-intensive inquiry that is inappropriate for resolution at the motion-to-dismiss phase.[48]
*718 ¶ 139. The director-defendants assert that to survive a motion to dismiss, a claimant must allege facts to overcome the presumption of the business judgment rule. They claim that "a majority of jurisdictions outside of Wisconsin .. . require allegations of fact that call into question the availability of the Business Judgment Rule . . . ,"[49] They cite 1 Stephen A. Radin, The Business Judgment Rule 58-61 (6th ed. 2009), as support for this proposition of law. I do not read Radin this way.
¶ 140. Radin contrasts Delaware law, which requires a complaint to plead facts with specificity, with federal law, which requires notice pleading.[50] Radin's overview of the federal case law supports the proposition that the Tower Air test is the norm in federal courts, in which no special fact pleading requirements exist. These cases under federal notice pleading do not rely on the business judgment rule at the motion to dismiss phase.[51] These federal decisions construing the federal counterpart to Wis. Stat. § 802.02(1) of the Wisconsin Rules of *719 Civil Procedure are persuasive in interpreting § 802.02(1), but are not controlling.[52]

¶ 141. Perhaps the paradigmatic post-Tower Air case is Shamrock Holdings, Inc. v. Arenson, 456 F. Supp. 2d 599 (D. Del. 2006). In Shamrock, plaintiff corporate directors and shareholders sought a judgment declaring that they did not breach their fiduciary duty during the sale of the corporation. The defendant minority shareholders filed a counterclaim alleging that the directors and shareholders breached their fiduciary duty by acting in bad faith, by being grossly negligent, and by self-dealing. The plaintiff corporate directors and shareholders filed a motion to dismiss the counterclaim, alleging that the minority shareholders implicitly raised the business judgment rule by the nature of their allegations and were required to plead around the business judgment rule.

¶ 142. The Shamrock court denied the motion to dismiss. Citing Tower Air, the court declared that as a general rule the court will not rely on the business judgment rule to trigger dismissal of a complaint at the motion-to-dismiss stage. Shamrock, 456 F. Supp. 2d at 609.

[53]

¶ 143. The director-defendants, by urging that the plaintiff be required to plead particular facts to overcome the business judgment rule at the motion-to-dismiss phase, are essentially asking that this court adopt specific fact pleading rules in Wisconsin. I would adhere to the Third Circuit's decision in Tower Air and subsequent decisions of other courts that have refused to 
*720
change notice pleading rules for a cause of action against corporate directors for breach of fiduciary duty.

¶ 144. The defendants attempt to find support in older Wisconsin cases, which required specific fact pleading regarding a director's breach of fiduciary duty. They cite, for example, Polacheck v. Michiwaukee Golf Club Land Co., 198 Wis. 78, 82, 223 N.W. 233 (1929), which sustained a demurrer based on the complaint's failure to allege specific abuse of power by corporate officers, and Thauer v. Gaebler, 202 Wis. 296, 232 N.W. 561 (1930), which held that a complaint against directors was insufficient without allegations of abuse of power, bad faith, willful abuse of discretion, or positive fraud.

¶ 145. These cases predate Wisconsin's notice pleading rules adopted in 1976 and have limited applicability in current notice pleading. The court explained the change in pleading requirements as follows:

[T]he new rules of civil procedure provide for notice pleading, and the resolution of the precise facts which sustain the claim is left to discovery.

Although under the prior demurrer provision, complaints were to be construed liberally in favor of stating a cause of action, under the new rules complaints are to be construed even more liberally. A complaint which might well have failed under the old procedure for failure to state sufficient facts now will be sustained if reasonable notice is given to the defendant in respect to the nature of the claim.[54]

*721
¶ 146. Like the court of appeals,

[55]

 I cannot locate any Wisconsin case in which the business judgment rule was applied at the motion-to-dismiss phase after our state's shift to notice pleading.

¶ 147. After analyzing Wis. Stat. § 802.02(1) and the federal decisions interpreting the Wisconsin counterpart to the federal rules, I conclude that the complaint is sufficient to state a claim for breach of fiduciary duty against the director-defendants in alleging the following:

• The directors allowed the Pauls to run the sale process exclusively;

[56]

• The directors failed to independently investigate the deadlines given by the Pauls for the end of the bidding process;

[57]

• The directors refused to investigate the higher bid fairly, and accepted the lower bid;

[58]

• The directors received particular payments and benefits from their vesting stock options and would not have received them absent the sales agreement with Permira;

[59]

• The directors received indemnification for breaches of their fiduciary duties and would not have received them absent the sales agreement with Permira;[60]
*722 • The directors "engaged in willful misconduct by willfully failing to deal fairly with the [plaintiffs and other shareholdersJ."[61]

¶ 148. The allegations in the complaint, which this court must accept as true, constitute a breach of loyalty upon which relief can be granted. The complaint thus survives a motion to dismiss.

¶ 149. On the third element, requiring an allegation that the breach of duty caused injury to the plaintiff, the complaint alleges that the sale of the corporation to Permira resulted in the minority shareholders' receiving less than the full value of their shares and that the sale of the corporation led to a loss of control of its shares.

¶ 150. The director-defendants argue that this is not a harm, because the complaint does not allege that if the corporation had not been sold, the stock would have been worth more than the $16.60 per share it actually received.

¶ 151. Like the court of appeals, I am not persuaded by the director-defendants' argument. As the court of appeals notes, the plaintiff relies on the difference in the value of the two offers: "[Tjhe Plato offers illustrate that the price that [the plaintiff] actually received from [the buyer-defendant] was less than the shares' value."[62] The complaint details that the Plato offer would have paid $18 per share; the buyer-defendant's offer ended up paying $16.60 per share. This difference in price is, for purposes of notice pleading and a motion to dismiss, sufficient to allege an injury caused by an alleged breach of fiduciary duty. The exact form of *723 injury suffered need not be spelled out in a complaint under the rules of notice pleading.[63]
¶ 152. I agree with the court of appeals that the complaint in the present case alleges a sufficient harm and that the motion to dismiss is not the appropriate procedure in which to argue the proper method for assessing the value of the corporation.[64]

¶ 153. Accordingly, I would hold that, under our notice pleading requirements, the complaint sufficiently alleges a claim for a breach of fiduciary duty by the director-defendants.

IV

¶ 154. I turn to the claims of the plaintiff minority shareholder against the Pauls for breach of their fiduciary duty as majority shareholders. The business judgment rule has no application to this claim.[65]
*724 ¶ 155. Again, the elements for a claim of breach of fiduciary duty are: (1) the defendant had a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused injury to the plaintiff.'[66]

¶ 156. On the first element, the plaintiff alleges that the Pauls, as majority shareholders, have a fiduciary duty to minority shareholders,

[67]

¶ 157. The plaintiffs allegation of such a fiduciary duty is in accord with our state's law. In Wisconsin it is a "well-settled and often applied rule of corporation law and equity that a majority stockholder occupies a fiduciary relationship toward minority shareholders."[68]

¶ 158. Generally, when majority shareholders take control of the corporation's actions, they stand in the same fiduciary relation to other shareholders as does a director or officer:

A majority shareholder who actually dominates the company, although not an officer, stands in the same fiduciary relation to the other shareholders as does a director or other officer. If a shareholder exercises absolute de facto control over a corporation, such actual dominion carries with it fiduciary responsibility regardless of the presence or absence of de jure titles. If a majority shareholder is also a director and the president or other chief officer of the corporation, that shareholder is generally considered a fiduciary.

*725 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5811 (West 2009).[69]

¶ 159. The complaint alleged the following relating to the Pauls' control of the sale of the corporation:

• The director-defendants "essentially abdicated their responsibilities as directors in conjunction with the sale process — leaving it to be run almost exclusively by the Pauls";[70]

• The Pauls used their own personal bank, Goldman Sachs, to serve as financial advisor for the corporation's sale, thus creating a conflict of interest;

[71]

*726 • Mr. Paul was the primary contact for Goldman Sachs at the corporation and served as the liaison between Goldman Sachs and the corporation;[72]
• The Pauls "completely dictatefd] the timing of the sale process from beginning to end."[73]

¶ 160. Viewing these allegations as admitted by the defendants under our standard of review for a motion to dismiss, I would hold that they sufficiently allege the first element, namely that the Pauls as majority shareholders directly controlled the behavior of the company, triggering their fiduciary duty to the minority shareholders.

¶ 161. On the second element, the nature of this fiduciary duty, the duty is one of good faith, fair dealing, and loyalty.

[74]

 The majority shareholders "may not use their position of trust to further their private interests."

[75]

¶ 162. The complaint alleges that the Pauls breached their majority shareholders' fiduciary duty of fair dealing and loyalty through self-dealing and by 
*727
exerting undue influence over the board to cause a sale of the entire company in a manner that benefited the Pauls at the expense of minority shareholders.

¶ 163. The allegations of self-dealing in the complaint, which this court must accept as true, can constitute a claim for breach of fiduciary duty upon which relief can be granted.

¶ 164. The complaint alleges that the Pauls would have received a tangible personal benefit from one offer and not the other. The plaintiff alleges that the Pauls rejected the higher Plato bid and accepted the Permira bid for several reasons, but alleges that at least one reason was that the higher Plato bid did not include a favorable licensing agreement for the Pauls:

[UJnlike the Sale Agreement with Permira, the Plato Proposal apparently did not include the grant to Base Camp Learning Services, Inc.... , a company controlled by the Pauls, of a non-exclusive, non-transferable license to use certain of Renaissance's software products and services for the internal educational use of the family and descendants of the Pauls ... [76]

¶ 165. The courts do not use the motion to dismiss as an opportunity to weigh the facts.

[77]

 Rather, a court gauges the motion to dismiss by viewing the facts alleged as true. The allegations of the complaint, taken as true, claim that the Pauls got a personal benefit in the Permira deal but not in the Plato deal. This assertion is 
*728
sufficient to support a reasonable inference that the Pauls engaged in self-dealing and violated their fiduciary duty of loyalty.

[78]

¶ 166. Given the notice pleading standards of our state, I would hold that the complaint in the instant case sufficiently alleges that the Pauls in their capacity as majority shareholders breached their fiduciary duty of loyalty to the minority shareholders. This allegation states a claim upon which relief can be granted.

¶ 167. On the third element, requiring an allegation that the breach of fiduciary duty caused injury to the plaintiff, the complaint alleges that the sale of the corporation to Permira resulted in the minority shareholders' receiving less than the full value of their shares.

[79]

¶ 168. As I have explained previously,

[80]

 the difference in prices between the two offers sufficiently alleges an injury caused by the Pauls' alleged breach of fiduciary duty for purposes of notice pleading and a motion to dismiss.

¶ 169. For the reasons set forth, I would agree with the court of appeals that the complaint satisfies the requirements of notice pleading. Our pleading rules require only that a complaint plead a "short and plain 
*729
statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief" Wis. Stat. § 802.02(1).

¶ 170. The complaint in the instant case gives fair notice to the defendants of the claims upon which relief can be granted. I am not presented with sufficient reason to create an exception to our notice pleading requirements in the present case.

¶ 171. Accordingly, I would affirm the decision of the court of appeals that the circuit court erred in granting the motions to dismiss the two claims discussed above, and I would remand the matter to the circuit court for further proceedings consistent with this opinion.

* * * *
¶ 172. For the reasons set forth, I dissent.
¶ 173. I am authorized to state that Justices ANN WALSH BRADLEY and N. PATRICK CROOKS join this dissent.

 See Data Key Partners v. Permira Advisors LLC, 2013 WI App 107, ¶ 25, 350 Wis. 2d 347, 837 N.W.2d 624.

 Majority op., ¶ 21 (emphasis added). The footnote cited for this proposition does not describe "plausibility" at all. Majority op., ¶ 21 n.9.

 See majority op., ¶¶ 22, 28-31, 37-38.

 Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

 Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

 Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)

 Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 630 (6th Cir. 2009) (granting a motion to dismiss a plaintiffs claim that his union discriminated against him on the basis of race, despite deeming the plaintiffs claim for relief "plausible"). See generally 5 Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1216 (3d ed. 2014) ("[C]ourts continue to struggle to categorize what allegations meet the [Twombly and Iqbal] decisions' amorphous requirements.").

 Patricia W. Hatamyar, The Tao of Pleading: Do Twombly and Iqbal Matter Empirically?, 59 Am. U. L. Rev. 553, 583 (2010).

 See, e.g., David Freeman Engstrom, The Twiqbal Puzzle and Empirical Study of Civil Procedure, 65 Stan. L. Rev. 1203, 1231 (2013) (collecting empirical studies of post-Twombly/Iqbal grants of motions to dismiss in federal district courts, all of which demonstrate increases).

 Maurin v. Hall, 2004 WI 100, ¶¶ 119-121, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring), (overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216.)

 Attorney's Title Guar. Fund v. Town Bank, 2014 WI 63, ¶ 56, 355 Wis. 2d 229, 850 N.W.2d 28 (Bradley, J., dissenting); see also Maurin, 274 Wis. 2d 28, ¶ 120 (Abrahamson, C.J. & Crooks, J., concurring) ("The rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral arguments.").

 Data Key Partners v. Permira Advisors LLC, 2013 WI App 107, 350 Wis. 2d 347, 837 N.W.2d 624.

 The other two claims — a claim against the directors for failure to disclose information and a claim against Permira for allegedly aiding and abetting breaches of fiduciary duty by the other defendants — were dismissed by the circuit court. The court *700 of appeals upheld dismissal of these claims. The parties do not address these claims, and neither do I.

 Wisconsin Stat. § 180.0828 creates a statutory version of the business judgment rule: A director is not liable for damages for liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the claimant proves that the breach or failure to perform falls within one of the exceptions set forth in the statute.

Section 180.0828 reads in full as follows:

(1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:

(a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.

(b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.

(c) A transaction from which the director derived an improper personal profit.

(d) Willful misconduct.

(2) A corporation may limit the immunity provided under this section by its articles of incorporation. A limitation under this subsection applies if the cause of action against a director accrues while the limitation is in effect.

 For a general discussion of a director's fiduciary duty to the corporation and shareholders, see American Law Institute, Principles of Corporate Governance: Analysis and Recommendations, Part V Duty of Fair Dealing, Introductory Note at 199-204 (1994).

 Wisconsin Stat. 802.06(2)(a)6. provides:

[T]he following defenses may at the option of the pleader be made by motion:

6. Failure to state a claim upon which relief can be granted.

 Johnson v. Rogers Mem'l Hosp., Inc., 2001 WI 68, ¶ 15, 244 Wis. 2d 364, 627 N.W.2d 890.

 MBS-Certified Public Accountants, LLC v. Wis. Bell, Inc., 2012 WI 15, ¶ 25, 338 Wis. 2d 647, 809 N.W.2d 857.

 Below v. Norton, 2008 WI 77, ¶ 18, 310 Wis. 2d 713, 751 N.W.2d 351.

 Wis. Stat. § 802.02(6) ('Allpleadings shall be so construed as to do substantial justice."); Doe v. Archdiocese of Milwaukee, 2005 WI 123, ¶ 35, 284 Wis. 2d 307, 700 N.W.2d 180 ('[CJlaims are to be liberally construed so as to do substantial justice") (internal quotation marks and citations omitted); Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶ 11, 283 Wis. 2d 555, 699 N.W.2d 205 ('[PJleadings are liberally construed").

 Ollerman v. O'Rourke Co., Inc., 94 Wis. 2d 17, 24, 288 N.W.2d 95 (1980) (citations omitted); Anderson v. Cont'l Ins. Co., 85 Wis. 2d 675, 683, 271 N.W.2d 368, 373 (1978) (citing Charles D. Clausen & David R Lowe, The New Wisconsin Rules of Civil Procedure: Chapters 801-803, 59 Marq. L. Rev. 1, 38 (1976)).

 Anderson, 85 Wis. 2d at 683 (citing Clausen & Lowe, supra note 21, at 38); Ollerman, 94 Wis. 2d at 24 (citations omitted).

 Doe, 284 Wis. 2d 307, ¶ 20 (internal quotation marks and citations omitted).

 For background on the adoption of notice pleading, see Charles D. Clausen and David P. Lowe, The New Wisconsin Rules of Civil Procedure: Chapters 801-803, 59 Marq. L. Rev. 1, 36-42 (1976). See also Alonge v. Rodriquez, 89 Wis. 2d 544, 552-53, 279 N.W.2d 207 (1979) (describing the change from "ultimate fact" pleading to "notice" pleading).

 "Subsection (1) [of Wis. Stat. § 802.02] is based on Federal Rule 8(a). Unlike the Federal Rule, however, this rule does not require a jurisdictional statement in the original pleading since Wisconsin state courts do not have the jurisdictional problems of minimum dollar amount or diversity of citizenshipClausen & Lowe, supra note 21, at 37.

 M at 38.

 Hansher v. Kaishian, 79 Wis. 2d 374, 385, 255 N.W.2d 564 (1977).

 Clausen & Lowe, supra note 21, at 39 (citing Wis. Stat. § 802.06(5)).

 Doe, 284 Wis. 2d 307, ¶ 36 (internal quotations marks and citations omitted).

 Reget v. Paige, 2001 WI App 73, ¶ 12, 242 Wis. 2d 278, 626 N.W.2d 302.

 Second Amended Complaint, ¶ 24.

 Grognet v. Fox Valley Trucking Serv., 45 Wis. 2d 235, 241-42, 172 N.W.2d 812 (1969).

 Rose v. Schantz, 56 Wis. 2d 222, 228, 201 N.W.2d 593 (1972).

 Grognet, 45 Wis. 2d at 242 (internal quotation marks) (citing Timme v. Kopmeier, 162 Wis. 571, 575, 156 N.W. 961 (1916)).

 See Zastrow v. Journal Communic'ns, Inc., 2006 WI 72, ¶¶ 28-29, 291 Wis. 2d 426, 718 N.W.2d 51 (holding that fiduciary duty includes duty of loyalty and duty to refrain from acting in self-interest); Modern Materials, Inc. v. Advanced Tooling Specialists, Inc., 206 Wis. 2d 435, 442, 557 N.W.2d 835 (Ct. App. 1996) ('It is well established that a corporate officer or director is under a fiduciary duty of loyalty, good faith and fair dealing in the conduct of corporate business.").

 Limitations provided by articles of incorporation are not at issue in the present case.

 "The business judgment rule ... contributes to judicial economy by limiting court involvement in business decisions where courts have no expertise and contributes to encouraging qualified people to serve as directors by ensuring that honest errors of judgment will not subject them to personal liability." Reget, 242 Wis. 2d 278, ¶ 17 (a summary judgment case).

 The court of appeals discusses its reasoning in more detail in its opinion, Data Key Partners, 350 Wis. 2d 347, ¶¶ 23-26.

 Defendants-Respondents-Petitioners' Brief at 17.

 Data Key Partners, 350 Wis. 2d 347, ¶ 24; Defendants-Respondents-Petitioners' Brief at 16.

 Reget, 242 Wis. 2d 278, ¶¶ 18-22.

 Defendants-Respondents-Petitioners' Brief at 16.

 See Yates v. Holt-Smith, 2009 WI App 79, ¶¶ 22-26, 319 Wis. 2d 756, 768 N.W.2d 213 (business judgment rule does not shield director who evidence shows has acted in bad faith); Reget, 242 Wis. 2d 278, ¶ 20 (deciding application of business judgment rule on summary judgment after review of "sufficient evidentiary facts").

 In re Tower Air, Inc., 416 F.3d 229, 237 (3d Cir. 2005).

 Id. at 237 (quoting Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).

Tower Air was decided prior to Twombly, 550 U.S. 544, and Iqbal, 555 U.S. 1030, regarding the federal pleading standard necessary to survive a motion to dismiss under Rule 12(b)(6).

No Wisconsin case has adopted the Twombly/Iqbal standard of heightened pleading requirements.

 When the business judgment rule is not explicitly stated on the face of the complaint, courts applying the Tower Air rule have "rejected the argument that dismissal is appropriate where the business judgment rule is implicitly raised." See Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford, 554 F. Supp. 2d 538, 557 (D. Del. 2008) (emphasis added) (citing Shamrock Holdings, Inc. v. Arenson, 456 F. Supp. 2d 599 (2006)). Absent an explicit mention of the business judgment rule, "defendants are not required to plead around the business judgment rule at [the motion-to-dismiss] stage in the proceedings." Shamrock, 456 F. Supp. 2d at 609.

 See ¶ 93, infra.

 The court of appeals, Data Key Partners, 350 Wis. 2d 347, ¶ 23, cites one commentator who summarizes the general view in federal case law that "determination and application of the business judgment rule requires a fact-intensive analysis that is inappropriate at the motion-to-dismiss stage." Zachary H. Star *718 nes, The Business Judgment Rule After Twombly and Iqbal: Must Plaintiffs Now Plead Around the Rule to Survive a 12(b)(6) Motion To Dismiss ?, 35 Am. J. Trial Advoc. 639, 655 (Spring 2012) (footnotes omitted).

 See Defendants-Respondents-Petitioners' Brief at 26.

 The court of appeals rejected an argument from the director-defendants based on Delaware law, which relied heavily on Mendel v. Carroll, 651 A.2d 297 (Del. Ch. 1994). The court of appeals determined that the case was inapplicable, because of the differences between Wisconsin and Delaware pleading requirements. Data Key Partners, 350 Wis. 2d 347, ¶¶ 30-33.

 1 Stephen A. Radin, The Business Judgment Rule 60-61 & n.247 (6th ed. 2009). See also FDIC v. Baldini, 983 F. Supp. 2d 772, 783, (S.D. W. Va. 2013), listing "overwhelming [federal] authority to support.. . [the position] that the business judgment rule is highly fact dependent and, therefore, inappropriate for consideration on a motion to dismiss."

 Wilson v. Cont'l Ins. Cos., 87 Wis. 2d 310, 316, 274 N.W.2d 679 (1979).

 See also Wolford, 554 F. Supp. 2d at 556-59 (a complaint must meet the notice pleading requirements of the federal rules and does not have to plead around the business judgment rule).

 Anderson, 85 Wis. 2d at 683-84 (citing Clausen & Lowe, supra note 21, at 38).

 Data Key Partners, 350 Wis. 2d 347, ¶ 21.

 Second Amended Complaint, ¶ 47.

 Id., ¶ 49.

 Id., ¶ 57.

 Id., ¶¶ 62-63.

 Id.

 Id, ¶ 27.

 Data Key Partners, 350 Wis. 2d 347, ¶ 45.

 Liebovich v. Minn. Ins. Co., 2008 WI 75, ¶ 40 310 Wis. 2d 751, 751 N.W.2d 764 (holding that claimants' allegation that the defendants "interfered with [their] interests" and that they were "aggrieved by" the conduct is sufficient to allege injury for purpose of triggering a duty to defend).

 Data Key Partners, 350 Wis. 2d 347, ¶ 46 ('To the extent that there are legal standards that would limit the methods by which [the plaintiff] may prove the value of its shares, the defendants will be free to argue those standards as applied to the evidence as the factual record develops.").

 The statutory version of the business judgment rule, Wis. Stat. § 180.0828, applies to directors, not controlling or majority shareholders. An analysis of the business judgment rule's application to the pleading stage is not relevant to the issue of a majority shareholder's breach of fiduciary duty.

 Reget, 242 Wis. 2d 278, ¶ 12.

 Second Amended Complaint, ¶ 24.

 Prod. Credit Ass'n of Lancaster v. Croft, 143 Wis. 2d 746, 754, 423 N.W.2d 544 (Ct. App. 1988) (citing S. Pac. Co. v. Bogert, 250 U.S. 483, 487-88 (1919)).

 See 2 James Cox & Thomas Hazen, Treatise on the Law of Corporations § 11:11 (3d ed. 2013) ('The basis for the controlling stockholder's fiduciary obligation is the sound policy that, just as directors are bound, by certain fiduciary obligations, one who has the potential to control the board's actions should be subject to an obligation as rigorous as those applied to the directors."); Yanow v. Teal Indus., Inc., 422 A.2d 311, 322, 178 Conn. 262, (1979) ('[T]he majority has the right to control, but when it does so, it occupies a fiduciary relationship toward the minority, as much as the corporation itself or its officers and directors."); Knaebel v. Heiner, 663 P.2d 551, 552-53 (Alaska 1983) ('It is well established that majority stockholders are considered fiduciaries with respect to minority stockholders within the same corporation. This fiduciary duty encompasses the obligation to act in good faith, to enter into transactions that are fair, and to fully disclose material facts."); Linge v. Ralston Purina Co., 293 N.W.2d 191, 193-94 (Iowa 1980) ('[Mjajority shareholders do owe a fiduciary duty to minority shareholders.").

 Second Amended Complaint, ¶ 47.

 Second Amended Complaint, ¶¶ 47, 67.

 Second Amended Complaint, ¶ 48.

 Second Amended Complaint, ¶ 49.

 See Zastrow, 291 Wis. 2d 426, ¶¶ 28-29 (holding that fiduciary duty includes duty of loyalty and duty to refrain from acting in self-interest); Modern Materials, 206 Wis. 2d at 442 ('It is well established that a corporate officer or director is under a fiduciary duty of loyalty, good faith and fair dealing in the conduct of corporate business.").

 Notz v. Everett Smith Group, Ltd., 2009 WI 30, ¶ 20, 316 Wis. 2d 640, 764 N.W.2d 904 (quoting Rose, 56 Wis. 2d at 228-29).

"A consistent facet of a fiduciary duty is the constraint on the fiduciary's discretion to act in his own self-interest because by accepting the obligation of a fiduciary he consciously sets another's interests before his own." Zastrow, 291 Wis. 2d 426, ¶ 28.

 Second Amended Complaint, ¶ 54.

 Cf. In re A.S., 2001 WI 48, ¶ 35, 243 Wis. 2d 173, 626 N.W.2d 712 (noting, in another civil context, that "in reviewing a motion to dismiss, we do not weigh the facts....").

 When a controlling shareholder sits on both sides of a transaction, the burden is on that controlling shareholder to demonstrate that the transaction was fair. 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations, § 5811.10 (West 2009) ('When a majority, dominant or controlling shareholder deemed to be a fiduciary is challenged for having engaged in self-dealing in property or services of the corporation, that shareholder has the burden of coming forward with evidence and the burden of persuasion to show that the transaction was scrupulously fair.").

 Second Amended Complaint, ¶ 4.

 See ¶¶ 83-85, supra.